THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUIRGUIS, a.k.a., GEORGE, EL-SHAWARY, a Washington Resident,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION as Trustee for GSR MORTGAGE LOAN TRUST 2006-4F MORTGAGE PASS-THROUGH CERTIFICATE SERIES 2006-4F *et al.*,<br><br>Defendants. | CASE NO. C18-1456-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for judgment on the pleadings (Dkt. No. 36). Having considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion in part and DENIES the motion in part for the reasons explained herein.

## I.   BACKGROUND

In 2005, Plaintiff purchased a home in Kenmore, Washington, after obtaining a purchase money mortgage that was secured with a deed of trust. (*See* Dkt. No. 16 at 2–4.) Defendant Nationstar Mortgage LLC is the servicer of Plaintiff's mortgage loan, while Defendant U.S. Bank National Association is the mortgage beneficiary. (*Id.* at 2–3.) Nationstar also acts as U.S. Bank's agent. (*See id.*)

In 2011, a flood and resulting landslide caused extensive damage to Plaintiff's home. (*Id.*

at 4.) As the cost of repairing the home began to mount, Plaintiff contacted Nationstar in 2015 and asked whether Nationstar could lower his monthly mortgage payment. (*Id.*) Nationstar allegedly responded that it could modify Plaintiff's loan only if he defaulted. (*Id.*)

Based on Nationstar's alleged response, Plaintiff defaulted on his loan around January 2016. (*Id.*) Nationstar subsequently foreclosed on the loan, and in January 2017, Nationstar and Plaintiff began foreclosure mediation. (*Id.*) Plaintiff alleges that during the mediation, Nationstar inaccurately calculated his income; used its subsidiary, Defendant Xome Inc., to generate an inflated $1,885,000 valuation of Plaintiff's home; failed to disclose its relationship with Xome; did not obtain or disclose a full appraisal of Plaintiff's home in a timely manner; and failed to disclose a pooling and servicing agreement that was purportedly key to Nationstar's ultimate decision to deny Plaintiff's request for a loan modification. (*See id.* at 4–8.)

After Nationstar denied Plaintiff's request, Plaintiff sued Nationstar, U.S. Bank, and Xome. (Dkt. No. 1.) Plaintiff brings claims under the Washington Consumer Protection Act ("CPA"), Wash Rev. Code ch. 19.86; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*; the Equal Credit Opportunity Act ("ECOA"),15 U.S.C. § 1691 *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and Washington's law against negligent misrepresentation. (Dkt. No. 16 at 5–21.)

Defendants now move for judgment on the pleadings, asking the Court to dismiss some of Plaintiff's RESPA claims, some of Plaintiff's negligent misrepresentation claims, and all of Plaintiff's ECOA and FDCPA claims. (*See* Dkt. No. 36 at 6–12.)

## II.    DISCUSSION

### A.    Legal Standard

A motion for judgment on the pleadings brought under Federal Rule of Civil Procedure 12(c) "faces the same test as a motion under Rule 12(b)(6)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. Although the court must accept as true a complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss. *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal "can [also] be based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

### B.   RESPA Claims

Plaintiff appears to allege three distinct violations of RESPA. First, Plaintiff claims that Nationstar and Xome violated 12 U.S.C. § 2607 when they failed to disclose Xome's relationship with Nationstar.[1] (*See* Dkt. No. 16 at 13–15) (citing 12 C.F.R. § 1024.15). Second, Plaintiff alleges that Nationstar violated 12 U.S.C. § 2605(e)(2)(A)–(C) when it did not "respond to access and provide plaintiff critical valuation information" during foreclosure mediation. (*See id.* at 12.) Third, Plaintiff asserts that Nationstar violated 12 U.S.C. § 2605 by failing to "evaluate all loss mitigation options." (*See id.* at 13) (citing "12 C.F.R. § 1024.41 *et seq.*").

Defendants move to dismiss Plaintiff's claims under 12 U.S.C. §§ 2607 and 2605(e). The Court dismisses those claims for the reasons explained below.

#### 1.   Nationstar's and Xome's alleged violations of 12 U.S.C. § 2607

12 U.S.C. § 2607 generally prohibits people from giving or accepting anything of value in exchange for referrals "incident to or part of a real estate settlement service involving a

---

[1] As the source of relief for Nationstar and Xome's alleged violations of RESPA, Plaintiff cites 12 U.S.C. § 2605(f)(1). (Dkt. No. 16 at 13–14.) While § 2605(f)(1) provides relief for violations of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.41, § 2605(f)(1) does not provide relief for violations of 12 C.F.R. § 1024.15. That latter regulation is made enforceable through 12 U.S.C. § 2607(d). *See* 12 U.S.C. § 2607(d)(1) (imposing penalties against "any person or persons who violate the provisions of this section"); 12 C.F.R. § 1024.15(b) (exempting affiliated business arrangements from "Section 8 of RESPA (12 U.S.C. 2607)").

1   federally related mortgage loan." *See* 12 U.S.C. § 2607(a), (c). 12 C.F.R. § 1024.15 exempts

2   "affiliated business arrangement[s]" from § 2607's prohibition and lists certain requirements that

3   such arrangements must meet. *See* 12 C.F.R. § 1024.15(b). Those requirements include, among

4   other things, a disclosure requirement: "the person making each referral [must] provide[] to each

5   person whose business is referred a written disclosure . . . of the nature of the

6   relationship . . . between the provider of settlement services . . . and the person making the

7   referral." 12 C.F.R. § 1024.15(b)(1). Plaintiff claims that Nationstar and Xome violated this

8   requirement and are therefore liable under § 2607. (*See* Dkt. No. 16 at 13–15.)

9         Plaintiff's claims fail because Nationstar did not refer Plaintiff to Xome "incident to or

10   part of a real estate settlement service." 12 U.S.C. § 2607(a). Although RESPA does not

11   meaningfully define "settlement service," it does provide a non-exhaustive list of services. *See*

12   12 U.S.C. § 2602(3). "All of the services, such as title searches and pest and fungus inspections,

13   are necessary for the closing [of the mortgage transaction]." *Bloom v. Martin*, 77 F.3d 318, 321

14   (9th Cir. 1996). This commonality between the listed services has led the Ninth Circuit and other

15   courts to hold that § 2607 is "limited to [settlement services] assessed before or at the property

16   transfer." *Molosky v. Wash. Mut.*, 664 F.3d 109, 118 (6th Cir. 2011); *see also Bloom*, 77 F.3d at

17   321. Plaintiff's home was transferred to him long before Nationstar solicited Xome's services.

18   Accordingly, those services are not regulated by § 2607.

19         Plaintiff argues that § 2607 regulates mediations regarding foreclosure alternatives

20   because 12 C.F.R. § 1024.2 broadly defines "settlement" to mean "the process of executing

21   legally binding documents regarding a lien on property." (Dkt. No. 37 at 9.) Plaintiff is correct

22   that a broad reading of "settlement" might include his mediation with Nationstar. However,

23   courts have rejected such a reading for two reasons. First, as discussed above, they observe that

24   the examples of "settlement services" listed in RESPA and its implementing regulations are all

25   "assessed before the property passes into the hands of the homeowners, i.e. at purchasing."

26   *Molosky*, 664 F.3d at 118; *cf. Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)) ("[W]e rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress."). Second, courts reason that "RESPA was enacted to protect consumers from unnecessary fees while purchasing a home" and that "nothing in the relevant portion of RESPA, its implementing regulations, or the plain meaning of the statute indicate a reason to extend the coverage of 'settlement services'" beyond the purchase of a home. *See id.* at 119 (quoting *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 590 (E.D.N.Y. 2005)). The reasoning of these courts is both persuasive and controlling in this case. *See Bloom*, 77 F.3d at 321. Accordingly, the Court DISMISSES with prejudice Plaintiff's claims under § 2607 against Nationstar and Xome.

2.     Nationstar's alleged violation of 12 U.S.C. § 2605(e)

12 U.S.C. § 2605(e) regulates the "servicing of mortgage loans" by requiring a loan servicer to respond to a "qualified written request [("QWR")] from the borrower . . . for information relating to the servicing of such loan." *See* 12 U.S.C. § 2605(e)(1)(A). By its terms, the requirement is limited to "information relating to . . . servicing," which the statute defines as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest of such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(e)(1)(A), (i)(3). Thus, if a borrower asks about something other than "servicing," § 2605(e) is irrelevant.

Here, Plaintiff communicated with Nationstar during mediation in an effort to have Nationstar modify his loan.[2] *U.S. Bank Nat'l Assoc. v. Tait*, Case No. C16-0767-JCC, Dkt. No.

---

[2] Plaintiff appears to misapprehend the claim he has alleged. In his complaint, Plaintiff alleges that "Nationstar violated . . . 12 U.S.C. § 2605(e)(2)(A)–(C)." (Dkt. No. 16 at 12.) But in advocating for his claim under § 2605(e), Plaintiff cites to the "loss mitigation requirements in [12 C.F.R.] § 1024.41." (*See* Dkt. No. 37 at 10.) 12 C.F.R. § 1024.41 relates to "loss mitigation

32 at 8 (W.D. Wash. 2016) ("[Foreclosure Fairness Act] disclosures are for the purpose of loan modification, not loan servicing . . . ."). Courts, including this one, "have repeatedly held that requests for information related to loan modifications do not concern 'servicing' and therefore are not QWRs." *Nash v. PNC Bank, N.A.*, 2017 WL 1424317, slip op. at 5 (D. Md. 2017) (collecting cases); *see Tait*, Case No. C16-0767, Dkt. No. 32 at 8. Accordingly, Plaintiff has failed to plead that he sent a QWR to Nationstar. The Court therefore DISMISSES with prejudice Plaintiff's claim against Nationstar for its alleged violation of § 2605(e)(2)(A)–(C).

### C.    FDCPA Claims

Congress enacted the FDCPA in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692. Congress defined a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Congress excluded from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . .  concerns a debt which was not in default at the time it was obtained by such person." *Id.* at § 1692a(6)(F). A person "obtains" a debt if they "take possession of a debt for servicing and collection even while the debt formally remains owed [to] another." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723–24 (2017).

In his complaint, Plaintiff does not plead the precise date when Nationstar took possession of his debt for servicing—at least, not in so many words. (*See generally* Dkt. No. 16.) But at several points, Plaintiff alleges facts that seem plausible only if Nationstar took possession of his debt for servicing well before Plaintiff defaulted. (*See id.* at 9.) For example, Plaintiff alleges,

---

applications," not QWRs, and the regulation does not impose additional obligations under § 2605(e). *See Bracco v. PNC Mortgage*, 2016 WL 4507925, slip op. at 4 (M.D. Fla. 2016).

38.1. [U.S. Bank] failed to require its servicer Nationstar to have policies and procedures in place reasonably designed to ensure the provision of accurate and timely disclosures to borrowers, investigate, respond to, and make corrections in response to complaints asserted by a borrower.

38.2 Through its agent Nationstar, [U.S. Bank] induced plaintiff into default. Toward the end of 2015, plaintiff contacted Nationstar and asked for help with a loan modification to reduce his monthly payment obligation. Nationstar informed plaintiff that he would have to default before Nationstar would provide any modification assistance. This gave plaintiff the net impression that defaulting was a step toward obtaining a loan modification. In accordance with Nationstar's representation that default was a necessary condition to being considered for a loan modification, plaintiff defaulted on his loan sometime in early 2016.

(*Id.* at 9–10) (citations omitted). Nationstar could not have been U.S. Bank's "servicer" and Plaintiff would not have contacted Nationstar to "ask for help with a loan modification" unless Nationstar had obtained Plaintiff's debt for servicing prior to Plaintiff defaulting. Consequently, Nationstar was not a "debt collector" under the FDCPA. *See* 15 U.S.C. § 1692(a)(6)(F); *Henson*, 137 S. Ct. at 1723–24.

In his response, Plaintiff alleges that Nationstar is a debt collector because it "did not properly 'acquire' meaningful or legitimate servicing rights of plaintiff's loan until months after default." (*See* Dkt. No. 37 at 6–7) (citing Dkt. No. 37-5 at 2). However, that allegation is not in Plaintiff's complaint, (*see generally* Dkt. No. 16), which the Court must assess as written, *see* Fed. R. Civ. P. 12(d). The Court concludes that as written, Plaintiff's complaint does not plead that Nationstar was a debt collector. The Court therefore DISMISSES Plaintiff's FDCPA claim. Because that claim could arguably be cured by an amendment, the Court dismisses the claim without prejudice. If Plaintiff wishes to amend his complaint, he may seek leave to amend under Federal Rule of Civil Procedure 15.[3]

### D.   ECOA Claims

The ECOA imposes four main requirements on creditors. *See* 15 U.S.C. § 1691(a), (d),

---

[3] Defendant argues that granting Plaintiff leave to amend is inappropriate. (*See* Dkt. No. 38 at 10–11.) That argument is best left unresolved unless and until Plaintiff seeks leave to amend his complaint to cure the defects identified by the Court in this order.

(e). First, a creditor must avoid discriminating against certain groups "with respect to any aspect of a credit transaction." *See id.* § 1691(a). Second, a creditor must notify a credit applicant that the creditor has received the applicant's application. *See id.* § 1691(d)(1). Third, a creditor must provide an applicant with a "statement of reasons" if the creditor takes an "adverse action" against the applicant. *See id.* § 1691(d)(2). And finally, a creditor must "furnish to an applicant a copy of any and all written appraisals and valuations developed in connection with the application for a loan that is secured or would have been secured by a first lien on a dwelling promptly upon completion." *Id.* § 1691(e)(1); *see* 12 C.F.R. § 1002.14. If a creditor violates any one of these four requirements, the aggrieved applicant may sue for the actual damages the applicant sustained due to the violation. *See* 15 U.S.C. § 1691e(a).

Here, Plaintiff claims that Nationstar violated the ECOA's fourth requirement when it failed to provide its appraisal and valuation of his home. (*See* Dkt. No. 16 at 15–16) (citing 12 C.F.R. § 1002.14). Defendants argue that Plaintiff's claim is defective because (1) Plaintiff does not allege that Nationstar discriminated against him because of his membership in a protected group and (2) Plaintiff alleges that Nationstar was the servicer and not the creditor of his loan. (*See* Dkt. No. 36 at 10–11.)

Defendants' first argument has no basis in the text of the ECOA. The ECOA's fourth requirement does not say that creditors may refuse to furnish appraisals and valuations to applicants so long as creditors refuse to furnish that information on an equal basis. Instead, the requirement says that creditors must "furnish to an applicant a copy of any and all written appraisals and valuations . . . promptly upon completion." Plainly, a creditor can violate this requirement even if an applicant is not a member of a protected group.[4] *See Schlegel v. Wells*

---

[4] Defendants misread the Court's decision in *U.S. Bank of North America v. Tait*, Case No. C16-0767-JCC, Dkt. No. 32 (W.D. Wash. 2016). In that case, the Taits claimed that U.S. Bank violated 15 U.S.C. § 1691(d)(2) because U.S. Bank failed to notify them that it had taken an adverse action against them. *See Tait*, Case No. 16-0767-JCC, Dkt. No. 32 at 8–9. The Court dismissed the Taits' § 1691(d)(2) claim because it was undisputed that U.S. Bank had not, in fact, taken an adverse action within the meaning of the statute. *See id.* at 9. The Court also noted

*Fargo Bank*, 720 F.3d 1204, 1211 (9th Cir. 2013) (citing *Thompson v. Galles Chevorlet Co.*, 807 F.2d 163, 166 (10th Cir. 1986), which observed that if a creditor fails to satisfy the ECOA's notice requirements, "he is in violation of the ECOA, regardless of whether he engaged in any prohibited discriminatory action").

Defendants' second argument fares no better. 15 U.S.C. § 1691a(e) defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 12 C.F.R. § 1002.2(l) further defines a "creditor" as "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." Although Defendants appear to assume that Nationstar regularly participated in credit decisions relating to Plaintiff's debt,[5] they argue that the ECOA does not apply to Nationstar because "Nationstar was only acting as U.S. Bank's agent." (Dkt. No. 38 at 9.) But nothing in the text of § 1691a(e) or 12 C.F.R. § 1002.2(l) excuses a creditor's agent from complying with § 1691(e)(1)'s disclosure requirement. Moreover, excusing an agent from complying with that requirement would make the requirement ineffectual where, as here, it was the agent who allegedly generated the appraisals and valuations that needed to be disclosed. (*See* Dkt. No. 16 at 15–16.) The Court will not interpret § 1691(e)(1) in a way that would render the provision ineffectual. Instead, the Court concludes that to the extent Nationstar generated appraisals or valuations in response to an application for credit by Plaintiff,[6] the ECOA required Nationstar to promptly furnish those

---

that the Taits had not alleged sufficient facts to make out a claim of discrimination under § 1691(a). *See id.* The Court analyzed the potential § 1691(a) claim separately from the § 1691(d)(2) claim, and the Court did not read § 1691(a)'s discrimination element into § 1691(d)(2). *See id.* Section 1691(d)(2), like § 1691(e)(1), does not contain a discrimination element.

[5] The Court adopts Defendants' assumption for the purposes of this order only.

[6] 15 U.S.C. § 1691a(b) defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C.

1    appraisals or valuations to Plaintiff. *See* 15 U.S.C. § 1691(e)(1). The Court therefore DENIES

2    Defendants' motion to dismiss Plaintiff's ECOA claims.

3              **E.      Negligent Misrepresentation Claim against Xome**

4              Plaintiff alleges that Xome negligently misrepresented the value of his home. (*See* Dkt.

5    No. 16 at 19–21.) To state a claim for negligent misrepresentation in Washington, a plaintiff

6    must allege, in addition to other elements, that the defendant "caused [the plaintiff] to justifiably

7    rely upon the [defendant's false] information." *See Havens v. C&D Plastics, Inc.*, 876 P.2d 435,

8    447 (Wash. 1994) (quoting Restatement (Second) of Torts § 552(1) (Am. Law Inst. 2002)).

9    Although Plaintiff alleges that Nationstar relied on Xome's valuation, (*See* Dkt. No. 16 at 20), he

10   does not allege that he justifiably relied on Xome's valuation. To the contrary, Plaintiff appears

11   to allege that he disputed Xome's valuation during the mediation process. (*See* Dkt. Nos. 2 at 2;

12   16 at 6, 10.) In fact, the report from the foreclosure mediator, which Plaintiff attached to his

13   complaint, explicitly states, "Borrower disputed both the income and property value ($1,885 mil)

14   due to severe water damage." (Dkt. No. 3-1 at 2.) If Plaintiff disputed Xome's valuation, it

15   follows that he did not rely on that valuation. And because Plaintiff did not rely on Xome's

16   valuation, he does not have a claim against Xome for negligent misrepresentation. *See Havens*,

17   876 P.2d at 447. The Court therefore DISMISESS with prejudice Plaintiff's negligent

18   misrepresentation claim against Xome.

19   **III.   CONCLUSION**

20             For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants'

21   motion for judgment on the pleadings (Dkt. No. 36). The Court ORDERS as follows:

22        1.  Plaintiff's claims under 12 U.S.C. § 2607 against Nationstar and Xome are DISMISSED

23

24   § 1691a(d) defines "credit" as "the right granted by a creditor to a debtor to defer payment of
     debt or to incur debts and defer its payment or to purchase property or services and defer

25   payment therefor." The parties have not briefed whether Nationstar generated appraisals or
     valuations in connection with an application for credit. The Court's order does not take a position

26   on that issue.

with prejudice;

2. Plaintiff's claim under 12 U.S.C. § 2605(e) against Nationstar is DISMISSED with prejudice;

3. Plaintiff's FDCPA claims are DISMISSED without prejudice; and

4. Plaintiff's negligent misrepresentation claim against Xome is DISMISSED with prejudice.

DATED this 1st day of July 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
C18-1456-JCC
PAGE - 11