THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GUIRGUIS EL-SHAWARY,<br><br>        Plaintiff,<br><br>    v.<br><br>US BANK NATIONAL ASSOCIATION, *et al.*,<br><br>        Defendants. | CASE NO. C18-1456-JCC<br><br>ORDER |

    Before the Court is Defendants U.S. Bank National Association ("U.S. Bank") and Nationstar Mortgage LLC's ("Nationstar") motion for summary judgment. (Dkt. No. 110.) Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion and DISMISSES Plaintiff's claims with prejudice as explained below.

I.    **BACKGROUND**

    A.    **Facts**[1]

    In 2005, Plaintiff Guirguis El-Shawary[2] bought a house in Kenmore, Washington, with a

---

[1] This statement of facts comes from the evidence before the Court on summary judgment. Plaintiff purports to dispute various facts but does not cite to any conflicting evidence in the record. (*See* Dkt. No. 114 at 2–3).

[2] Plaintiff's name in the caption is "El-Shawary," but the correct spelling appears to be "El-Sharawy." (*See* Dkt. No. 113 at 9.)

ORDER
C18-1456-JCC
PAGE - 1

$1 million loan secured by a promissory note to Countrywide Home Loans. (Dkt. Nos. 72 at 8; 113 at 23.) Countrywide later assigned the note to U.S. Bank, as trustee for GSR Mortgage Loan Trust 2006-4F, Mortgage Pass-Through Certificate Series 2006-4. (Dkt. No. 37-5 at 2–3.)

Sometime before October 2015, a flood and landslide damaged Plaintiff's house.[3] (Dkt. Nos. 72 at 106, 112–16; 113 at 63.) In October 2015, facing costly repairs and unrelated medical bills, Plaintiff called Nationstar, his loan servicer, for assistance because "I couldn't handle making all these payments." (Dkt. No. 113 at 63.) Nationstar allegedly told Plaintiff that "the only way" it would help is if "you stop making payment" on the loan. (Dkt. No. 113 at 64.)

Plaintiff defaulted on his loan in April 2016. (Dkt. Nos. 115-10 at 3; 115-12 at 4.) From July 2016 through February 2017, he submitted three loan modification requests to Nationstar; but Nationstar denied them because (1) it determined that Plaintiff's unpaid principal balance exceeded HAMP[4] program requirements and (2) Plaintiff had submitted incomplete documentation for his requests. (*See* Dkt. No. 72 at 31–83 (communications regarding missing documentation and loan modification requests).) Nationstar did not base any of these denials on an appraisal of Plaintiff's property; the denials were due solely to excessive unpaid principal balances and incomplete documentation. (*Id.* at 3–4.)

In March 2017, Plaintiff submitted the additional documents; but Nationstar again denied his request because it determined that modifying Plaintiff's loan would not reduce his monthly payments. (*Id.* at 5, 85) Unlike previous denials, Nationstar based this one on a December 2016 valuation report appraising Plaintiff's property at $1.89 million. (*Id.* at 5, 90–94.) Plaintiff appealed the denial, arguing that Nationstar had miscalculated his income in denying

---

[3] Plaintiff's first declaration and his complaint state that this occurred in March 2011. (Dkt. Nos. 2 at 1; 100 at 4.) However, this information is not properly part of the record. *See* Pt. II.A.

[4] HAMP stands for "Home Affordable Modification Program." It was a federal program created to help homeowners avoid foreclosure in response to the 2008 financial crisis. *See Home Affordable Modification Program (HAMP)*, U.S. DEP'T OF THE TREAS. (last visited Nov. 5, 2021) https://home.treasury.gov/data/troubled-assets-relief-program/housing/mha/hamp.

ORDER
C18-1456-JCC
PAGE - 2

modification; but as Nationstar explained, Plaintiff's income—correctly calculated or not—had not impacted the denial, which was based on the fact that modifying his loan would not reduce his payments. (Dkt. No. 111 at 3, 11–12, 41–43.)

### 1. First Mediation

Washington's Foreclosure Fairness Act establishes a mediation program to encourage loan modifications in lieu of foreclosures. *See generally Brown v. Wash. State Dep't of Commerce*, 359 P.3d 771, 773–75 (Wash. 2015) (explaining Washington's deed-of-trust system and its foreclosure mediation program). This program allows attorneys and government-certified housing counselors to refer defaulting borrowers to mediation. *Id.* at 774. In late 2016, Plaintiff received a notice of default and was referred to foreclosure mediation. (Dkt. No. 115-3 at 2–9.) There were three sessions, one in each of March, May, and August 2017 (collectively the "First Mediation"). (Dkt. No. 115-1 at 2.) During those sessions, Plaintiff apparently disputed the validity of the $1.89 million valuation, asserting that it overvalued his home because it failed to consider the flood damage. (*Id.* at 3.) "A full appraisal was ordered but resulted in no 'credible opinion of value' due to damage and was not pursued further." (*Id.*) The mediator's post-mediation report found that Nationstar had failed to mediate in good faith. (*See id.*)

### 2. Second Mediation

In August 2018, Plaintiff received a second notice of default and was again referred to mediation. (Dkt. Nos. 115-3 at 10–17; 116 at 2.) This time, there were five sessions, one in July 2019 and one in each of March, April, June, and July 2020 (collectively the "Second Mediation"). (Dkt. No. 112 at 4–5.) During this process, Nationstar offered multiple modification proposals to Plaintiff, all of which he rejected. (*See* Dkt. No. 113 at 104–09.) He says the proposals were unsatisfactory because "[t]hey appraised the property on a condition that the property was not in . . . So they were coming up with numbers based on things that just didn't make any sense." (Dkt. No. 113 at 55). Plaintiff "was not really happy with how Nationstar was handling the mediation. They were not coming in to settle anything." (Dkt. No. 113 at 60.)

In spring 2020, Plaintiff and Nationstar entered a loan modification agreement; under the modification, Plaintiff's past-due amounts were rolled into his unpaid principal balance and spread over a longer loan term with lower payments, a lower interest rate, and a non-interest-bearing balloon payment at the end of the term. (Dkt. Nos. 111 at 56–57; 112 at 5; 116 at 2–3.) Plaintiff testified that he was "forced into" this modification agreement (Dkt. No. 113 at 79), but he is not arguing unconscionability, duress, or fraud. (The complaint mentions "duress," (Dkt. No. 100 at 4), but Plaintiff clarified this to mean that he saw an agreement as "the only way to . . . move on with my life," (Dkt. No. 113 at 120).)

The mediator's post-mediation report for the Second Mediation did not conclude that any party failed to act in good faith. (Dkt. No. 112 at 5.) The mediator did state that she "is concerned regarding borrower's payment and communications options for his present modified loan. Due to pending litigation, beneficiary [i.e., Nationstar] is blocking Mr. Elsharawy [sic] from making electronic and automatic payments on the loan and from access and communication regarding his account, except for his monthly statements." (*Id.*) However, Plaintiff does not seek any relief or make any argument based on this. (*See generally* Dkt. Nos. 100, 114.)

Plaintiff testified at his deposition that, because of Nationstar, he had "people knocking on my door . . . driving by my house like I'm a criminal . . . coming to my door, putting notes on my door," and calling him repeatedly. (Dkt. No. 113 at 67.) But he does not base any argument or request for relief on these allegations. (*See generally* Dkt. Nos. 100, 114.)

B.  **Procedural History**

Plaintiff sued in October 2018 asserting claims against Nationstar under Washington's Consumer Protection Act ("CPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Equal Credit Opportunity Act ("ECOA") and the Fair Debt Collection Practices Act ("FDCPA"); and against U.S. Bank and Xome Inc. under the CPA and RESPA, respectively. (*See* Dkt. No. 1 at 5–18.) Plaintiff filed a second amended complaint adding McCarthy & Holthus ("M&H") as a

defendant. (Dkt. No. 54.) As of a result of this Court's prior rulings, M&H and Xome[5] are no longer defendants. (Dkt. Nos. 51 at 10–11; 97 at 8; 107 at 3.) The current incarnation of Plaintiff's lawsuit is his third amended complaint. (Dkt. No. 100.) It asserts that Nationstar and U.S. Bank committed several CPA violations, (*id.* at 9–22); that Nationstar violated ECOA and the FDCPA; and that Nationstar and U.S. Bank are liable for negligent misrepresentation, (*id.* at 22–31). Defendants seek summary judgment on all remaining claims. (Dkt. No. 110.)

## II.   DISCUSSION

### A.   Legal Standard and Scope of the Record

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmoving party and resolves ambiguity in that party's favor, but it must not make credibility determinations or weigh evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 255 (1986); *Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994). The moving party has the initial burden to show the lack of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that party succeeds, the burden shifts to the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24.

Regarding the contents of the record on summary judgment, the Court "need only consider *the cited materials*." Fed. R. Civ. P. 56(c)(3) (emphasis added). It does not have "to comb through the record to find some reason to deny a motion for summary judgment." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009). Nor may the nonmovant stand on allegations in the complaint, unsupported conjecture, or conclusory statements. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Similarly, uncorroborated, self-serving testimony does not create a factual dispute precluding summary judgment. *Villiarimo v.*

---

[5] The complaint lists Xome in the caption but makes no substantive allegations against it. (*See* Dkt. No. 100 at 1.) To the extent Xome is still a defendant, this order disposes of any claims Plaintiff may purport to assert against it.

1  *Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Finally, affidavits or declarations supporting or opposing summary judgment must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4).

Some of Plaintiff's evidence fails these standards in two significant ways. First, his opposition purports to adopt "the facts as stated in the third amended complaint and its exhibits." (Dkt. No. 114 at 1 (citing Dkt. No. 100).) But allegations are not evidence, and the third amended complaint has no exhibits. Instead, it purports to "incorporate[] by reference all the exhibits filed along with the original complaint" and later amended versions. (Dkt. No. 100 at 1.) "It is well established in our circuit that an amended complaint supersedes the original, the latter being treated thereafter as nonexistant." *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citation omitted). Thus, an "amended pleading must not incorporate by reference any part of the preceding pleading, including exhibits." W.D. Wash. Local Civ. R. 15. The exhibits attached to Plaintiff's pleadings other than his current complaint are thus not properly before the Court on summary judgment.

Second, Plaintiff's first declaration says he was "duly sworn upon oath" but gives no indication (such as a jurat or notary seal) that someone administered an oath. (Dkt. No. 2 at 1.) He signed the declaration as "[s]worn this 3rd day of October, 2018 in Kenmore, King County, Washington," but does not certify his statements under penalty of perjury as needed to substantially comply with 28 U.S.C. § 1746. (*See id.* at 3.) The Court thus does not consider Plaintiff's first declaration. *See, e.g.*, *Shepard v. Quillen*, 840 F.3d 686, 687 n.1 (9th Cir. 2016).

B.   **Washington Consumer Protection Act**

To state a claim under the CPA, a plaintiff must demonstrate (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) impacting the public interest, (4) an injury to the plaintiff's business or property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

Plaintiff's CPA claims fail because there is no evidence to satisfy the last two *Hangman*

*Ridge* requirements—injury to business or property and causation. To establish injury to business or property, monetary damages are not required, and unquantifiable damages may suffice. *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012). But while the injury need not be great, it must still be established. *Id.* (citing *Hangman*, 719 P.2d at 539; *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 900 (Wash. 2009)). The causation element requires both "but for" and proximate causation. *See Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241 F.3d 696, 706 (9th Cir. 2001).

Plaintiff asserts several CPA claims based on numerous alleged instances of unfair, deceptive, or *per se*[6] unlawful conduct, but his CPA claims can be grouped into four categories: (1) claims based on Nationstar's conduct at the First Mediation, (Dkt. No. 100 at 9–13); (2) claims based on Nationstar's conduct at the Second Mediation, (*id.* at 14–18); (3) claims asserting vicarious liability against U.S. Bank for Nationstar's conduct, (*see generally id.* at 9–18); and (4) claims based on U.S. Bank's failure to require Nationstar to follow certain policies, (*see id.* at 19–22).

Distilling these claims even further, Plaintiff's overarching CPA theory is that Nationstar induced him to default on his loan, then dealt with him in a dismissive, obstructionist, dilatory, and bad faith manner, thereby making it hard for him to obtain a favorable loan modification; and U.S. Bank is liable because it is Nationstar's principal, and it failed to erect guardrails to prevent Nationstar's misconduct. (*See generally* Dkt. No. 100 at 9–22.) Plaintiff identifies four potentially cognizable injuries as flowing from this conduct: (1) a reduction in his credit, (2) having to pay disallowed mediation fees, (3) being "forced" into default to begin with, and (4) ending up with an inflated loan that requires him to pay amounts for which he is not liable, that were never appropriately explained, or that he would have paid but for Defendants' alleged

---

[6] A *per se* CPA claim allows a plaintiff to satisfy the first three elements of *Hangman Ridge* by showing that the defendant violated "a statute that contains a specific legislative declaration of public interest impact." Wash. Rev. Code § 19.86.093(2); *see also Panag*, 204 P.3d at 897.

delays. (Dkt. Nos. 100 at 16; 114 at 15–18.) On the current record, none of these is sufficient to withstand summary judgment.[7]

### 1. Diminished Credit

Plaintiff testified that "Nationstar destroyed my credit. I used to have a 780 credit score. Now . . . [i]t's like in the 500s." (Dkt. No. 113 at 153.) He offers evidence that his credit score is 697 (Dkt. No. 115-14 at 2), but this credit report is untimely and thus not properly before the Court.[8] Even if this were not the case, Plaintiff cites no evidence that his credit score used to be higher or that Nationstar is responsible for where it is now. He says it would be higher "had Nationstar avoided or mitigated plaintiff's default in good faith," (Dkt. No. 114 at 15–16), but that is pure speculation. Moreover, the report seemingly shows dozens of missed payments or collections on unrelated debts during the relevant period. (*See* Dkt. No. 115-14 at 16, 20, 28, 35–37.) There are thus multiple possible culprits for any decrease and nothing establishing that Nationstar is to blame.

### 2. Forced Default

Plaintiff says that he defaulted on the loan only because Nationstar forced him to. (*See* Dkt. No. 114 at 16–17 (citing Dkt. No. 2 at 2 (Plaintiff's improperly subscribed declaration)).)

---

[7] Plaintiff's pleadings arguably hint at a fifth injury: Requesting that he agree to release future claims against Nationstar as a condition of modification. (Dkt. No. 100 at 16.) But the clause in question does not do that; it merely provides that Plaintiff will bear his own fees and costs if any existing litigation is dismissed due to the modification agreement. (*See* Dkt. Nos. 111 at 58; 115-8 at 4.) Moreover, the parties' final agreement specifies that the disputed clause does not require Plaintiff to dismiss this lawsuit or waive other claims. (Dkt. No. 111 at 61.)

[8] Plaintiff did not produce the credit report in discovery and instead generated it after Defendants moved for summary judgment. (Dkt. Nos. 120 at 1–2; 122 at 1–2.) He argues there is no prejudice to Defendants, because he produced a prior credit report that they did not ask him about at his deposition. (Dkt. No. 122 at 3–4.) But the previous credit report is from August 2016—the beginning of the disputed causation period—and is difficult to interpret. (*See* Dkt. No. 123-1 at 2.) Defendants are indeed prejudiced by their inability to question Plaintiff about this new method of proof. The Court thus declines to consider this untimely evidence. *Cf. Monfort v. Adomani*, 2019 WL 6311378, slip op. at 6–7 (N.D. Cal. 2019) (declining to consider new theory of fraudulent inducement first raised after defendants sought summary judgment).

But his own uncorroborated testimony is the only support for this.[9] (*See* Dkt. No. 113 at 35–36, 104). Such testimony is insufficient to create a fact issue precluding summary judgment. *Villiarimo*, 281 F.3d at 1061; *see also Gomes v. Bank of America, N.A.*, 2013 WL 2149743, slip op. at 1, (D. Haw. 2013) (plaintiff alleged that servicer's agent told him "his loan needed to be in default before it could be modified"), *aff'd*, 637 F. App'x 346, 346 (9th Cir. 2016) ("Defendants were not responsible for Gomes's default. Gomes defaulted because he could no longer afford payments, not because he relied on Defendants' statements or was expecting a loan modification.").

More fundamentally, the record is conclusive that Plaintiff was virtually certain to default anyway. He contacted Nationstar in October 2015 specifically because he needed "to see what options he has for the prop[erty] b/c *he cannot afford it any longer*." (Dkt. No. 72 at 126 (emphasis added).) "Sliding land and water issues had made the mortgage payment impossible and default was imminent." (Dkt. No. 4 at 2 (plaintiff's expert report); *accord* Dkt. Nos. 72 at 106; 113 at 63, 137–38.) Plaintiff cites no evidence from which a jury could reasonably find that he was not already facing default when he contacted Nationstar.

### 3.  Mediation Fees

Plaintiff alleges that Nationstar charged him $2,800 in mediation fees in violation of Wash. Rev. Code § 61.24.163(17)'s requirement that "the mediator's fee must be divided equally between the beneficiary and the borrower." (*See* Dkt. Nos. 100 at 16; 116 at 3.) He cites no evidence that this happened. On the contrary, the fees in question related not to mediation but to foreclosure expenses that Nationstar charged to Plaintiff. (Dkt. Nos. 111 at 3–4, 46–53; 113 at

---

[9] Plaintiff cites a customer service call log as corroborating his testimony. (Dkt. No. 114 at 17 (quoting Dkt. No. 41-1 at 3–4).) At most, this document establishes that Plaintiff called Nationstar on October 30, 2015, and received information about loan modifications. It also indicates that Plaintiff "cannot make a payment on the account." (*Id.* at 4.) In any case, this document is not properly before the Court, because it is an exhibit to a proposed amended complaint (Dkt. Nos. 41–41-3) that was later superseded by the current complaint (Dkt. No. 100). *See Ramirez*, 806 F.3d at 1008; W.D. Wash. Local Civ. R. 15.

44–45.) Even if these were mediation fees, that would be a standalone CPA claim for $2,800 as to which the Court would lack subject matter jurisdiction, given the Court's rulings, below, on Plaintiff's federal claims. *See* Pt. II.C–D. Moreover, it would not be the proximate result of any other deceitful or unfair conduct of which he accuses Nationstar.

### 4. Delayed Loan Modification

Plaintiff asserts that Nationstar's dilatory conduct put him deeper into arrears than he would have been, leaving him with an inflated loan. (*See, e.g.*, Dkt. Nos. 114 at 11–12; 116 at 2–3.) The arrears at issue come in two flavors: actual loan payments (i.e., principal and interest) and escrow monies for insurance and taxes. (*See* Dkt. No. 116 at 3–4.)

As to escrow, Plaintiff alleges that Nationstar improperly charged him for amounts that were already baked into his modified loan principal, effectively double charging him and putting him in in default at the start of the modified loan term. (Dkt. Nos. 100 at 9; 113 at 87–89.) Defendants point out that Plaintiff is simply mistaken: After entering the loan modification, his escrow balance *was* zero, but he was still liable for new escrow payments. (Dkt. Nos. 113 at 92–99; 115-13 at 5; 119 at 7.) Nothing suggests that this apparent misunderstanding, (Dkt. No. 116 at 3), is due to actionable conduct.

As for inflated debts other than escrow payments, Plaintiff asserts that such arrears would not exist but for Nationstar's conduct. (*See, e.g.*, Dkt. No. 100 at 12.) It is true that, if "a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property" under the CPA. *Frias v. Asset Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014). But Plaintiff cites no evidence aside from his own assertions that Nationstar's mediation conduct prevented him from obtaining a better or earlier loan modification or that Nationstar had an obligation to modify his loan at all. (*See generally* Dkt. No. 114.) The only evidence of Nationstar's alleged misconduct is the mediator's report that Nationstar acted in bad faith at the First Mediation when it "Failed to Provide Timely and/or Accurate Documents," "Failed to Timely Participate in Mediation," and:

> denied modification for "Insufficient monthly payment reduction" due to investor requirements but did not produce PSA [pooling and servicing agreement], other investor restrictions or attempt to obtain a waiver in violation of RCW 61.24.163(5)(j). Beneficiary [i.e., Nationstar] did not honor the modification options it stated were open to the Borrower, did not confirm verification of income it used in NPV and failed to obtain a full appraisal in a timely manner. NPV is in dispute and Beneficiary failed to address concerns. Borrower disputed both the income and the property value ($1,885 mil) due to severe water damage. On Appeal, Beneficiary stated that the "income was not calculated" and "there are no NPV calculations to provide" despite requests for this data. Borrower's NPV passed with a benefit of $16,703 based on a $700,000 home value and $16,812 income. A full appraisal was ordered but resulted in no "credible opinion of value" due to damage and was not pursued further.

(Dkt. No. 115-1 at 3.) However, Plaintiff cites no evidence that, but for this conduct, he would have obtained a better loan modification. Nor is it clear how much of the arrears that accrued between Plaintiff's initial default in 2016 and the modification in 2020 resulted from Nationstar's conduct versus Plaintiff not making even partial payments.

According to Nationstar's evidence, it denied Plaintiff's first three modification requests because *Plaintiff* submitted incomplete documentation and because his loan did not meet HAMP program requirements. (Dkt. No. 72 at 31–83.)[10] And Plaintiff cites no evidence that knowing the inputs for Nationstar's calculations or the terms of the apparently withheld PSA—both of which Plaintiff has presumably had a chance to explore in discovery—would have resulted in an earlier or better modification. Nor does he controvert Nationstar's evidence that Nationstar's denials were unrelated to his income, miscalculated or not. (Dkt. No. 111 at 41–43.) Nationstar did rely on the $1.89 million valuation report when it denied modification in March 2017. (Dkt. No. 72 at 5, 90–94.) But Plaintiff does not dispute Nationstar's evidence that a valuation as low as $1.1 million would still have resulted in denial, (Dkt. No. 111 at 3), and his own appraiser valued the property at $1.8 million, even when considering the flood damage. (Dkt. No. 74 at 5.) Finally, Nationstar apparently offered Plaintiff multiple modification proposals that he rejected.

---

[10] Plaintiff concedes that "I never qualify for HAMP because there was no possible way I can be approved for HAMP." (Dkt. No. 113 at 52.)

(*See* Dkt. No. 113 at 104–09.)

In short, Plaintiff cites no competent evidence that he was entitled to a modification sooner, or on different terms than he ultimately received, or that he could have avoided further default had he received one.[11] *See Bonyadi v. CitiMortgage, Inc.*, 2013 WL 2898143, slip op. at 7 (C.D. Cal. 2013) (plaintiff failed to establish causation under California unfair competition law where there was no duty to consider a borrower for a loan modification); *Ogorsolka v. Residential Credit Sols., Inc.*, 2014 WL 2860742, slip op. at 5 (W.D. Wash. 2014) (absent allegations that plaintiffs "were wrongfully denied a loan modification *for which they were eligible*," plaintiff failed to establish that defendant "acted deceptively during the . . . modification process and that its actions caused Plaintiffs' injury" under the CPA. (emphasis added)).

The record reflects that Plaintiff ultimately achieved what he wanted—a loan modification. His chief complaint stems not from a legal injury but instead from Nationstar's tenor throughout the mediations and its failure to justify to his satisfaction the various charges for which he ultimately acknowledged liability when he agreed to the modification. (*See* Dkt. No. 113 at 81–83). Plaintiff "was not happy with how it was handled," (*id.* at 100), but nonetheless viewed accepting the modification as "the only way to . . . move on with my life," (*id.* at 120.) Nationstar may well have acted unprofessionally or disagreeably; but Plaintiff cites no evidence that it caused him an injury for which the CPA affords relief. Accordingly, the Court GRANTS summary judgment to Defendants on Plaintiff's CPA claims.

Because the Court determines that causation and injury are dispositive of Plaintiff's CPA claims, the Court does not address the parties' arguments regarding the other *Hangman Ridge* elements or whether U.S. Bank should be liable either as Nationstar's principal or for not

---

[11] Plaintiff's expert purports to opine on these issues, however "[c]onclusory expert declarations devoir of facts upon which the conclusions were reached," or "where the record clearly rebuts the inference the expert suggests," cannot defeat summary judgment. *Digital Control Inc. v. McLuaghlin Mfg. Co.*, 242 F. Supp. 2d 1000, 1007 (W.D. Wash. 2002).

requiring Nationstar to follow certain policies or procedures.

### C. Fair Debt Collection Practices Act

To state an FDCPA claim, a plaintiff must establish, among other things, that the defendant is a "debt collector" subject to the FDCPA. *See Robinson v. Wells Fargo Bank Nat'l Ass'n*, 2017 WL 2311662, slip op. at 5 (W.D. Wash. 2017). In simplified terms, a "debt collector" is anyone who does business in interstate commerce for the principal purpose of collecting debts owed to another. 15 U.S.C. § 1692a(6).

Nationstar says it is not a debt collector because its collection activities concerned "a debt which was not in default at the time it was obtained by [Nationstar]." (Dkt. No. 110 at 14 (citing 5 U.S.C. § 1692a(6)(F)(iii)).) The Ninth Circuit's decision in *De Dios v. International Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir 2011) illustrates how this statutory exception functions: The defendant acquired the right to collect a debt in February 2006; but payment on the debt was not due until August 2007. Thus, the debt was "not in default" when the defendant acquired the right to collect it, and the defendant was not a debt collector. *Id.*

Here, Nationstar began servicing Plaintiff's loan in September 2013. (Dkt. No. 72 at 2, 27–28.) Plaintiff did not default on the loan until April 2016. (Dkt. Nos. 115-10 at 3; 115-12 at 4.) The "not in default" statutory exception therefore applies. Plaintiff's own allegations confirm this as a matter of law: He would not have called Nationstar for assistance if it were not his loan servicer, and it is undisputed that Plaintiff's default occurred after that phone call. The Court GRANTS summary judgment to Defendants on Plaintiff's FDCPA claim.

### D. Equal Credit Opportunity Act

In addition to outlawing discrimination among applicants for credit, ECOA requires creditors to "furnish to an applicant a copy of any . . . written appraisals" developed in connection with an application for credit "promptly upon completion, but in no case later than 3 days prior to the closing of the loan." 15 U.S.C. § 1691(e)(1); *see also* 12 C.F.R. § 1002.14(a)(1).

Plaintiff claims that Nationstar violated this requirement with respect to "several

valuations," but he only identifies two: the $1.89 million valuation, and another one appraising his property at $1.31 million. (Dkt. No. 100 at 23.) Plaintiff received the former about a month after it was completed, as part of a pre-mediation packet for the First Mediation. (Dkt. No. 73 at 2, 4–5, 55–59.) His own statements to the Washington Attorney General's Office confirm this. (*See* Dkt. No. 72 at 106 ("[W]e did receive[] a copy" of this report).) The only contrary evidence is Plaintiff's improperly certified declaration (Dkt. No. 2), and his expert report, (Dkt. No. 4 at 14). Plaintiff's expert, however, is not actually opining on this issue. (*Id.* at 8–9 ("Scope of My Review").) That part of the expert report merely relays information the expert received from Plaintiff. (Dkt. No. 119 at 11 (citing Dkt. No. 114 at 21 (arguing that his expert "gained personal knowledge through review of pertinent documents and questions posed to plaintiff")).) Nationstar is thus entitled to summary judgment on the claim that it withheld the $1.89 million valuation.

Nationstar asserts that its alleged failure to provide the $1.31 million valuation does not violate ECOA because it never relied on that valuation to deny Plaintiff's modification requests. (Dkt. Nos. 72 at 2–4; 110 at 16.) Plaintiff neither responds to that argument nor identifies any evidence that this lower valuation was "developed in connection with" any application for credit, as might trigger ECOA's disclosure rules. (*See* Dkt. No. 114 at 20–21.)

The Court GRANTS summary judgment to Defendants on Plaintiff's ECOA claim.

E.   **Negligent Misrepresentation**

Plaintiff alleges that Nationstar misrepresented the completeness of his modification requests and the nature and existence of its calculations bearing on its modification decision. (Dkt. No. 100 at 29.) A defendant is liable for negligent misrepresentation if (1) it supplied false information, (2) that it knew or should have known would be used as guidance in the plaintiff's business transactions, (3) was negligent in obtaining or communicating the false information, (4) the plaintiff reasonably relied on the false information, and (5) the false information proximately caused damages. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2009).

ORDER
C18-1456-JCC
PAGE - 14

Plaintiff cites no evidence demonstrating causation, falsity, or the existence of a business transaction. The Court discussed the causation issue above, *see* Pt. II.B, and Plaintiff cites no evidence that Nationstar's statements about the completeness of his or about its calculations were false. (*See generally* Dkt. No. 114.) Nationstar also had no reason to think that Plaintiff was using any information it provided as guidance for a business transaction. (*See* Dkt. No. 113 at 23–24, 26, 153 (the property at issue is Plaintiff's home and not one of the properties that he rents as a landlord).) His negligent misrepresentation claim thus fails as a matter of law. The Court GRANTS summary judgment to Defendants on Plaintiff's negligent misrepresentation claim.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment (Dkt. No. 110). Plaintiff's third amended complaint (Dkt. No. 100) is DISMISSED with prejudice.

DATED this 8th day of November 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE